1  Jack Silver, Esquire SBN: 160575
   Kimberly Burr, Esquire SBN: 193805
2  Law Office of Jack Silver
   Post Office Box 5469
3  Santa Rosa, California 95402-5469
   Telephone: (707) 528-8175
4  Facsimile:  (707) 528-8675
   lhm28843@sbcglobal.net
5
   Attorneys for Plaintiff
6  Northern California River Watch

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11  NORTHERN CALIFORNIA RIVER          **CASE NO: C06-06831 PJH**
    WATCH, a non-profit Corporation,
12
                    Plaintiff,         **FIRST AMENDED COMPLAINT FOR**
13          v.                         **INJUNCTIVE RELIEF, CIVIL**
                                       **PENALTIES,  RESTITUTION AND**
14  SHAMROCK MATERIALS, INC.,          **REMEDIATION**
    SHAMROCK MATERIALS OF NOVATO,      **(Environmental - Clean Water Act**
15  INC., and DOES 1 - 10, Inclusive,  **33 U. S.C. § 1251 et seq.)**

16                  Defendants.
                              /
17

18

19      NOW   COMES   Plaintiff,   NORTHERN  CALIFORNIA  RIVER  WATCH  (hereafter,

20  "PLAINTIFF") by and through its attorneys, and for its First Amended Complaint against defendants,

21  SHAMROCK MATERIALS, INC., SHAMROCK MATERIALS OF NOVATO, INC., and DOES 1-10,

22  Inclusive, (hereafter, "DEFENDANTS") states as follows:

23                  **I.   NATURE OF THE CASE**

24  1.      This is a citizens' suit for relief brought by PLAINTIFF under the Federal Water Pollution Control

25  Act or Clean Water Act (hereafter, "CWA"), 33 U.S.C. § 1251 et seq., specifically 33 U.S.C. § 1365,

26  CWA § 505, and 33 U.S.C. § 1311, CWA § 301, to stop DEFENDANTS from repeated and ongoing

27  violations of the CWA.  These violations are detailed in the April 28, 2005 Notice of Violations and

28  Intent to File Suit and the November 1, 2006 Supplemental Notice of Violations and Intent to File Suit

1   (hereafter, "NOTICES"), made part of the pleadings of this case as Exhibit A to this First Amended

2   Complaint.

3   2.        DEFENDANTS are routinely violating the terms of the CWA by discharging pollutants into the

4   waters of the United States in violation of the procedural requirements of National Pollutant Discharge

5   Elimination System (hereafter, "NPDES") General Permit No. CAS000001 [State Water Resources

6   Control Board] Water Quality Order No. 97-03-DWQ and Water Quality Order No.91-13-DWQ (as

7   amended by Water Quality Order 92-12-DWQ) and issued pursuant to 33 U.S.C. § 1342(p) (hereafter,

8   "General Permit") and CWA §§ 402(a) and (b), 33 U.S.C. §§1342(a) 1342(b), by routinely violating the

9   NPDES point source permit requirements.

10  3.        PLAINTIFF seeks declaratory relief, injunctive relief to prohibit future violations, the imposition

11  of civil penalties, and other relief for DEFENDANTS' violations of the terms of their NPDES Permit and

12  their violations of the CWA.

13  4.        Under 33 U.S.C § 1251(e), CWA § 101, Congress declared its goals and policy with regard to

14  public participation in the enforcement of the CWA.  33 U.S.C. §1251(e) provides, in pertinent part:

15          Public participation in the development, revision, and enforcement of any regulation,
            standard, effluent limitation, plan or program established by the Administrator or any
16          State under this chapter shall be provided for, encouraged, and assisted by the
            Administrator and the States.
17

18  5.        DEFENDANTS have illegally discharged and continue to illegally discharge wastewater to the

19  Russian River, Big Sulphur Creek, the Petaluma River, Novato Creek, and San Francisco Bay all of

20  which are habitat for threatened and endangered species as that term is defined by the California

21  Environmental Protection Agency and United States Environmental Protection Agency.

22  6.        DEFENDANTS have mined and continue to mine gravel in amounts which exceed the limits set

23  out in their Permits intended to protect water quality and critical habitat.    This over excavation is a

24  violation of the public trust, violation of DEFENDANTS' Permit, violation of DEFENDANTS'

25  allotments under the County of Sonoma's Aggregate Resources Management Plan ("ARM Plan"), and

26  violations of the Surface Mining and Reclamation Act. These violations constitute unfair business

27  practices which include any unlawful, unfair or fraudulent business act or practice.

28

C06-06831 PJH
First Amended Complaint                              2

## II.  PARTIES

7.      PLAINTIFF, NORTHERN CALIFORNIA RIVER WATCH, is a 501(c)(3) non-profit public benefit corporation duly organized under the laws of the State of California, with headquarters located at 6741 Sebastopol Avenue, Suite. 140, Sebastopol, CA 95472.  PLAINTIFF is dedicated to protecting, enhancing, and helping to restore the surface and subsurface waters of Northern California.

8.      Many of PLAINTIFF's members live in or around the County's of Sonoma, Marin, and Napa. PLAINTIFF's members have interests which are or may be adversely affected by DEFENDANTS' violations as described herein.  Said members use the above described water bodies, their tributaries, and effected watershed areas for domestic recreation, drinking water, sports, fishing, swimming, hiking, photography, nature walks and the like. Furthermore, the relief sought herein will redress the injury in fact, likelihood of future injury and interference with the interests of said members.

9.      DEFENDANTS SHAMROCK MATERIALS, INC. and SHAMROCK MATERIALS OF NOVATO, INC., are California corporations with registered and administrative offices located at 181 Lynch Creek Way, Suite 200, Petaluma, CA 94954.   DEFENDANTS are engaged in the business of mining, extraction, asphalt and cement manufacturing.

10.     DEFENDANTS DOES 1 - 10, Inclusive, respectively, are persons, partnerships, corporations and entities, who are, or were, responsible for, or in some way contributed to, the violations which are the subject of this First Amended Complaint or are, or were, responsible for the maintenance, supervision, management, operations, or insurance coverage of DEFENDANTS' facilities as identified in the NOTICES.  The names, identities, capacities, and functions of DEFENDANTS DOES 1 - 10, Inclusive are presently unknown to PLAINTIFF. PLAINTIFF shall seek leave of court to amend this First Amended Complaint to insert the true names of said DOE Defendants when the same have been ascertained.

## III.  JURISDICTIONAL ALLEGATIONS

11.     Subject matter jurisdiction is conferred upon this Court by 33 U.S.C. § 1365(a)(1), CWA § 505(a)(1), which states in part that, "any citizen may commence a civil action on his own behalf against any person . . . .who is alleged to be in violation of (A) an effluent standard or limitation . . . . or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." For purposes

1  of Section 505, "the term 'citizen' means a person or persons having an interest which is or may be
2  adversely affected."

3  12.    Members and supporters of PLAINTIFF reside in the vicinity of, derive livelihoods from, own
4  property near, and/or recreate on, in or near and/or otherwise use, enjoy and benefit from the above
5  described waterbodies, their tributaries, wetlands, hydrologically connected water bodies and associated
6  natural resources into which PLAINTIFF contends DEFENDANTS discharge pollution, or by which
7  DEFENDANTS' operations adversely affect those members' interests, in violation of the CWA. The
8  health, economic, recreational, aesthetic and environmental interests of PLAINTIFF and its members may
9  be, have been, are being, and will continue to be adversely affected by DEFENDANTS' unlawful
10 violations of the CWA. PLAINTIFF contends there exists an injury in fact to its members, causation of
11 that injury by the conduct of DEFENDANTS complained of herein, and a likelihood that the requested
12 relief will redress that injury.

13 13.    Pursuant to 33 U.S.C.§1365(b)(1)(A), CWA § 505(b)(1)(A), PLAINTIFF gave notice of the
14 violations alleged in this First Amended Complaint more than sixty (60) days prior to commencement of
15 this lawsuit, to the DEFENDANTS, the United States Environmental Protection Agency (both Federal
16 and local), and the State of California Water Resources Control Board.

17 14.    Pursuant to 33 USC § 1319(g)(6)(B), CWA § 309(g)(6)(B), notice of the alleged violations was
18 given sixty (60) days prior to filing suit and the suit has been filed within one hundred twenty (120) days
19 of the date notice was given.

20 15.    Pursuant to 33 U.S.C. § 1365(c)(1), CWA § 505(c)(1), venue lies in this District as the
21 DEFENDANTS' operations and facilities which are the sources of the violations complained of in this
22 First Amended Complaint are located within this District.

23 16.    The federal courts have original jurisdiction over all civil actions arising under the Constitution,
24 laws or treaties of the United States. 28 U.S.C.S. § 1331. The federal courts have supplemental
25 jurisdiction over state law claims if the claims are "so related" to the federal claims that they form part
26 of the same case or controversy. 28 U.S.C.S. § 1367.

27
28

C06-06831 PJH
First Amended Complaint                        4

## IV. GENERAL ALLEGATIONS

17. PLAINTIFF incorporates by reference all the foregoing including the NOTICES attached hereto as Exhibit A

18. All illegal discharges and activities complained of in this First Amended Complaint occur in the following locations identified in the NOTICES: wetlands located on DEFENDANTS' property, the Russian River and its tributaries including Big Sulphur Creek and Laguna de Santa Rosa, the Petaluma River and its tributaries, the Napa River and its tributaries, Novato Creek and its tributaries, San Francisco Bay and its tributaries, wetlands, and/or hydrologically connected water bodies all of which are waters of the United States.

19. The Environmental Protection Agency ("EPA"), State Water Resources Control Board ("SWRCB") and the applicable Regional Water Quality Control Boards (hereafter, "RWQCB") have determined that the above described watershed areas and affected waterways are beneficially used for drinking water, water contact recreation, non-contact water recreation, fresh water habitat, wildlife habitat, preservation of rare and endangered species, fish migration, fish spawning, industrial service supply, navigation, and sport fishing.

20. DEFENDANTS own and/or operate in stream gravel mining, distribution, asphalt, cement manufacturing, and retail operations and facilities located in Sonoma, Marin, and Napa Counties, California, as identified in the NOTICES (hereafter "FACILITIES"). The operations are commercial businesses mining and selling rock products including gravel and cement, to developers, builders, and individuals. DEFENDANTS have discharged and continue to discharge from the FACILITIES both directly and indirectly during storm and non storm periods into the waterways referenced above.

21. Beneficial uses of most portions of the specified waterways are being affected in a prohibitive manner by the illegal discharges and activities of DEFENDANTS. Also pursuant to 33 U.S.C. § 1311 and CWA § 304, the EPA and the State of California have identified DEFENDANTS' operations on the FACILITIES as point sources, the discharges from which contribute to violations of applicable water quality standards. The violations herein described and alleged are continuing.

# V.  STATUTORY AND REGULATORY BACKGROUND

22.     33 U.S.C. §§ 1311(a) & (b), CWA § 301(a) and § 301(b) prohibit the discharge of pollutants from a "point source" into the navigable waters of the United States, unless such discharge is in compliance with applicable effluent limitations as set by the EPA and the applicable State agencies. DEFENDANTS' FACILITIES are point sources under the CWA.  The effluent limits would normally be incorporated into a NPDES permit for that point source specifically. Pursuant to 33 U.S.C. § 1311(a), CWA § 301(a), the EPA and the State of California have formally concluded that discharges of pollutants by the DEFENDANTS of the type as alleged in this First Amended Complaint and identified in the NOTICES, are prohibited by law.  Additional sets of regulations are set forth in the Basin Plan, California Toxics Rule, the Code of Federal Regulations and other regulations promulgated by the EPA and the State Water Resources Control Board.  33 U.S.C. § 1311, CWA § 301(a) prohibits discharges of pollutants or activities not authorized by, or in violation of an effluent standard or limitation or an order issued by the EPA or the State with respect to such a standard or limitation including a NPDES permit issued pursuant to 33 U.S.C. § 1342, CWA § 402.  33 U.S.C. § 1316, CWA § 306 specifically identifies cement manufacturing as a point source activity with specific effluent limitations.

23.     The effected waterways detailed in this First Amended Complaint and in the NOTICES are navigable waters of the United States within the meaning of 33 U.S.C. § 1362(7), CWA § 502(7).

24.     The Administrator of the EPA has authorized the RWQCB to issue NPDES permits, subject to specified conditions and requirements, pursuant to 33 U. S.C. § 1342, CWA § 402.

25.     The RWQCB has not adopted a NPDES permit prescribing effluent limitations for DEFENDANTS' gravel mining FACILITIES with regard to direct discharges to waters of the United States. DEFENDANTS have filed an application with the RWQCB to be covered by California's General Storm Water Permit (hereafter, "General Permit") pursuant to 33 U.S.C. § 1342(p), CWA § 402(p) for a few of DEFENDANTS' FACILITIES as described in the NOTICES.

26.     A NPDES permit prescribes conditions to ensure compliance with the CWA. It requires the discharger to establish and maintain records, to install, use and maintain monitoring equipment, to install and use best available or best conventional technologies to reduce and eliminate discharges, to regularly

1  monitor and sample pollutants in its discharges, and to report in specified ways on a regular basis to the

2  RWQCB regarding discharge of pollutants from a facility. The reports include mandatory monitoring.

## VI.  CLAIMS FOR RELIEF

### A.  First Claim for Relief

### Violation of CWA § 301, and CWA § 402

### Discharge of Pollutants from Point Sources Without a NPDES

### Permit for Non-Stormwater Point Source Pollution

8  27.      PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 26

9  as though fully set forth herein including all allegations in the NOTICES attached hereto as Exhibit A

10  and incorporated herein by reference.

11  28.      CWA § 301(a) and § 301(b), 33 U.S.C. §§ 1311(a) and 1311(b), prohibit the discharge of

12  pollutants from a "point source" into the navigable waters of the United States, unless such discharge is

13  in compliance with applicable effluent limitations as set by EPA and the applicable State agencies.

14  DEFENDANTS' FACILITIES are point sources under the CWA.  The effluent limits would normally

15  be incorporated into a NPDES permit for that point source specifically. Pursuant to CWA § 301(a), 33

16  U.S.C. § 1311(a), the EPA and the State of California have formally concluded that the discharges of

17  pollutants by the DEFENDANTS of the type identified in the NOTICES and in this First Amended

18  Complaint, are prohibited by law.  Additional sets of regulations are set forth in the Basin Plan, California

19  Toxics Rule, the Code of Federal Regulations and other regulations promulgated by EPA and the State

20  of California.  CWA § 301(a), 33 U.S.C. § 1311, prohibits discharges of pollutants or activities not

21  authorized by, or in violation of an effluent standard or limitation or an order issued by EPA or the State

22  with respect to such a standard or limitation including a NPDES permit issued pursuant to CWA § 402,

23  33 U.S.C. § 1342. . CWA § 306, 33 U.S.C. § 1316, specifically identifies auto dismantling as a point

24  source activity with specific effluent limitations.

25  29.      PLAINTIFF is informed and believes and on such information and belief alleges that

26  DEFENDANTS have and continue to violate the CWA as evidenced by the discharges of pollutants from

27  operations taking place at their FACILITIES  to waters of the United States without a NPDES permit

28  for non-stormwater discharges as described in the NOTICES.

30.     The violations of DEFENDANTS as alleged in this First Amended Complaint are ongoing and will continue after the filing of this First Amended Complaint. PLAINTIFF alleges herein all violations which may have occurred or will occur prior to trial, but for which data may not have been available or submitted or apparent from the face of the reports or data submitted by DEFENDANTS to the RWQCB or to PLAINTIFF prior to the filing of this First Amended Complaint. PLAINTIFF will file amended complaints if necessary to address DEFENDANTS' State and Federal violations which may occur after the filing of this First Amended Complaint. Each of the DEFENDANTS' violations are separate violations of the CWA.

31.     PLAINTIFF avers and believes that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases from their FACILITIES.  PLAINTIFF avers and believes that the relief requested in this First Amended Complaint will redress the injury to PLAINTIFF and its members, prevent future injury, and protect the interests which are or may be adversely affected by DEFENDANTS' violations of the CWA, as well as other State and Federal standards.

## B. Second Claim for Relief

## Violation of CWA § 402(p)

## Discharging Stormwater without an Industrial Storm Water NPDES Permit

32.     PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 31 as though fully set forth herein including all allegations in the NOTICES attached hereto as Exhibit A and incorporated herein by reference.

33.     CWA § 301(a), prohibits the discharge of any pollutant into waters of the United States, unless such discharge is in compliance with various enumerated sections of the Clean Water Act.  CWA § 402(p) regulates industrial stormwater discharges.

34.     The General Permit as described in the NOTICES prohibits discharges of stormwater contaminated with industrial pollutants which are not otherwise regulated by an NPDES permit, to storm sewer systems or waters of the United States.

35.     PLAINTIFF is informed and believes and on such information and belief alleges that DEFENDANTS have and continue to violate the CWA due to their failure to have acquired a NPDES permit for stormwater discharges from their FACILITIES.

36.     DEFENDANTS' violations of CWA §§ 301(a) and 402(p) are ongoing and will continue after the filing of this First Amended Complaint.

37.     PLAINTIFF avers and believes that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases. PLAINTIFF avers and believes that the relief requested in this First Amended Complaint will redress the injury to PLAINTIFF and its members, prevent future injury, and protect the interests which are or may be adversely affected by DEFENDANTS' violations of the CWA, as well as other State and Federal standards.

### C.   <u>Third Claim for Relief</u>

### Violation of CWA § 402(p)

### Violations of the General Permit

38.     PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 37 as though fully set forth herein including all allegations in the NOTICES attached hereto as Exhibit A and incorporated herein by reference

39.     PLAINTIFF is informed and believes and on such information and belief alleges that DEFENDANTS are not in compliance with the provisions of CWA § 402(p) requiring industrial dischargers to comply with the General Storm Water Permit as described in the NOTICES.

40.     The General Permit prohibits discharges of storm water contaminated with industrial pollutants, which are not otherwise regulated by an NPDES permit, to storm sewer systems or waters of the United States.

41.     PLAINTIFF is informed and believes and on such information and belief alleges that DEFENDANTS have violated and continue to violate the CWA and the General Permit as evidenced by the discharges of storm water containing pollutants to the affected water bodies in violation of CWA § 301 and CWA § 402(p).

42.    PLAINTIFF is informed and believes and on such information and belief alleges that DEFENDANTS have and continue to violate the General Permit. Any violations of the General Permit are violations of the CWA . PLAINTIFF is informed and believes and on such information and belief allege the violations of DEFENDANTS are ongoing and will continue after the filing of this First Amended Complaint.

43.    PLAINTIFF avers and believes that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases. PLAINTIFF avers and believes that the relief requested in this First Amended Complaint will redress the injury to PLAINTIFF and its members, prevent future injury, and protect the interests which are or may be adversely affected by DEFENDANTS' violations of the CWA, as well as other State and Federal standards.

### D.   Fourth Claim for Relief

### Violation of CFR  Subchapter N Parts 411, 436, 440, and 443

### Discharges Must Not Exceed Effluent Limitations and Guidelines

44.    PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 43 as though fully set forth herein including all allegations in the NOTICES attached hereto as Exhibit A and incorporated herein by reference

45.    DEFENDANTS have and continue to violate the CWA by failing to ensure that discharges of pollutants from their FACILITIES do not exceed acceptable established levels for storm water and non-storm water discharge of pollutants set out in the General Permit and 40 CFR Subchapter N Parts 411, 436, 440, and 443.

46.    PLAINTIFF avers and believes that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases. PLAINTIFF avers and believes that the relief requested in this First Amended Complaint will redress the injury to PLAINTIFF and its members, prevent future injury, and protect the interests which are or may be

1 adversely affected by DEFENDANTS' violations of the CWA, as well as other State and Federal
2 standards.

### E. Fifth Claim for Relief

### Violation of The General Permit Requiring

### Best Management Practices Be Implemented to Achieve

### National Standards of Performance

7  47.     PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 46
8  as though fully set forth herein including all allegations in the NOTICES attached hereto as Exhibit A
9  and incorporated herein by reference.

10  48.    The General Permit requires that dischargers implement Best Management Practices to reduce and
11  eliminate polluted discharges to waters of the United States.

12  49.     PLAINTIFF is informed and believes and on such information and belief alleges that
13  DEFENDANTS have and continue to violate the CWA by operating and discharging pollutants from their
14  FACILITIES in a manner which does not reflect the required degree of effluent reduction determined by
15  the EPA to be "achievable through application of the best available demonstrated control technology,
16  processes, operating methods, or other alternatives, including, where practicable, a standard permitting
17  no discharge of pollutants." 33 CWA § 306.

18  50.     PLAINTIFF avers and believes that without the imposition of appropriate civil penalties and the
19  issuance of appropriate equitable relief, DEFENDANTS will continue to violate the CWA as well as
20  State and Federal standards with respect to the enumerated discharges and releases. PLAINTIFF avers
21  and believes that the relief requested in this First Amended Complaint will redress the injury to
22  PLAINTIFF and its members, prevent future injury, and protect the interests which are or may be
23  adversely affected by DEFENDANTS' violations of the CWA, as well as other State and Federal
24  standards.

25  //
26  //
27  //
28  //

**F. Sixth Claim for Relief**

**Violation of The General Permit**

**Failure to Report, Monitor and Update Reports in a Timely Manner**

51.     PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 50 as though fully set forth herein including all allegations in the NOTICES attached hereto as Exhibit A and incorporated herein by reference.

52.     PLAINTIFF is informed and believes and on such information and belief alleges that DEFENDANTS have violated and continue to violate the CWA by failing to perform adequate and timely monitoring of discharges from their FACILITIES and by failing to update  and submit complete and adequate monitoring reports and plans in a timely manner as required in the General Permit.

53.     PLAINTIFF avers and believes that without the imposition of appropriate civil penalties and the issuance of appropriate equitable relief, DEFENDANTS will continue to violate the CWA as well as State and Federal standards with respect to the enumerated discharges and releases. PLAINTIFF avers and believes that the relief requested in this First Amended Complaint will redress the injury to PLAINTIFF and its members, prevent future injury, and protect the interests which are or may be adversely affected by DEFENDANTS' violations of the CWA, as well as other State and Federal standards.

**G.  Seventh Claim for Relief**

**Violation of California's Business and Professions Code § 17200 et seq.**

**Engaging in Unfair, Illegal, or Fraudulent Business Practices**

54.     PLAINTIFF realleges and incorporates by reference the allegations of Paragraphs 1 through 53 as though fully set forth herein including all allegations in the NOTICES attached hereto as Exhibit A and incorporated herein by reference.

55.     PLAINTIFF is informed and believes and on such information and belief alleges that DEFENDANTS violations of the CWA as enumerated above are also violations of California's Business and Professions Code § 17200 et seq. in that DEFENDANTS are engaging in unfair, illegal, or fraudulent business practices which have caused PLAINTIFF and its members to have suffered injury in fact such as lost money or property as a result of such violations.  DEFENDANTS' violations cause pollution and

1   loss of habitat requiring PLAINTIFF and its members to spend monies to correct problems, move their

2   activities to other less polluted and disturbed sites and take protective measures, all of which cause the

3   expenditure of funds which would otherwise not be necessary absent DEFENDANTS' violations of the

4   CWA as alleged in this First Amended Complaint. .

5   56.    PLAINTIFF is informed and believes and on such information and belief alleges that

6   DEFENDANTS have mined and continue to mine gravel at their FACILITIES in amounts which exceed

7   the limits set out in its permits, which limits are intended to protect water quality and critical habitat. This

8   over excavation is a violation of the public trust, a violation of DEFENDANTS' CWA § 401 permit, and

9   a violation of DEFENDANTS' allotments under the County of Sonoma's Aggregate Resources

10  Management Plan ("ARM Plan"), the county's Surface Mining Ordinance, the County's use permit, and

11  the Surface Mining and Reclamation Act.

12  57.    PLAINTIFF is informed and believes and on such information and belief alleges that

13  DEFENDANTS have licences allowing them to mine approximately 150,000 cubic yards of gravel from

14  surface mining at or near DEFENDANTS' FACILITIES located in Cloverdale.   Governmental officials

15  estimate that DEFENDANTS actually mine considerably more than allowed either under the ARM Plan

16  or DEFENDANTS CWA or RWQCB permits. Estimates range as high as 400,000 cubic yards of public

17  resources in the form of gravels which are being over excavated by DEFENDANTS. DEFENDANTS

18  fraudulently conceal these violations constituting also a false Federal and State claim as those terms are

19  defined under the False Claims Act. These violations constitute unfair business practices insofar as unfair

20  competition includes any unlawful, unfair or fraudulent business act or practice.

21  58.    PLAINTIFF is informed and believes and on such information and belief alleges that as a result

22  of DEFENDANTS' violation of California's Business and Professions Code § 17200 et seq., PLAINTIFF

23  and its members have suffered injury in fact and have lost money or property.   The gravel over excavated

24  by DEFENDANTS is a natural resource which belongs to all the citizens of Sonoma County.

25  PLAINTIFF and its members purchase resources from facilities other than the FACILITIES, which are

26  not in violation of the General Permit, a NPDES permit or the CWA. Due to the fact these other facilities

27

28

1 | comply with applicable laws, they must charge more money for their product than DEFENDANTS. Due

2 | to the fact that PLAINTIFF and its members pay a premium for shopping at more "green" businesses,

3 | PLAINTIFF and its members have suffered injury in fact such as lost money or property.

4 | 59.    PLAINTIFF avers and believes that without the imposition of appropriate penalties and the

5 | issuance of appropriate equitable relief, DEFENDANTS will continue to violate the California's Business

6 | and Professions Code §17200 et seq. PLAINTIFF avers and believes that the relief requested in this First

7 | Amended Complaint will redress the injury to PLAINTIFF and its members, prevent future injury, and

8 | protect the interests which are or may be adversely affected by DEFENDANTS' violations.

9 | ## VII.  RELIEF REQUESTED

10 | WHEREFORE, PLAINTIFF prays that the Court grant the following relief:

11 | 60.    Declare DEFENDANTS to have violated and to be in violation of the CWA;

12 | 61.    Declare DEFENDANTS to have violated Business and Professions Code §17200 et seq., by

13 | violating local, state, and federal laws governing in stream gravel mining;

14 | 62.    Issue an injunction ordering DEFENDANTS to immediately operate their FACILITIES, as

15 | described in the NOTICES, in compliance with the CWA and applicable effluent and receiving water

16 | limitations of State and Federal standards, including acquiring the appropriate permits including NPDES

17 | permits for direct discharges from cement manufacturing to the affected water bodies, and to file a Notice

18 | of Intent to be covered by an NPDES Permit for unpermitted facilities;

19 | 63.    Order DEFENDANTS to pay civil penalties of $32,500.00 per violation per day for their

20 | violations of the CWA;

21 | 64.    Order DEFENDANTS to pay PLAINTIFF's reasonable attorneys' fees and costs (including

22 | expert witness fees), as provided by 33 U.S.C. § 1365(d) and applicable California law; and,

23 | 65.    Grant such other and further relief as may be just and proper.

24 |

25 | DATED: January 4, 2007

KIMBERLY BURR
Attorney for Plaintiff
NORTHERN CALIFORNIA RIVER WATCH

# EXHIBIT A

# Law Office of Jack Silver



P.O. Box 5469          Santa Rosa, California 95402
Phone 707-528-8175      Fax 707-542-7139
warrioreco@yahoo.com

April 28, 2005

*Via Certified Mail / Return Receipt Requested*

Eugene B. Ceccotti, Owner,  President
and Registered Agent
Shamrock Materials of Novato, Inc.
Shamrock Materials, Inc.
181 Lynch Creek Way, Suite 200
Petaluma, CA  94954-2388

Re:  *Notice of Violations and Intent to File Suit Under the Clean Water Act*

Dear Mr. Ceccotti:

I am writing on behalf of Northern California River Watch ("River Watch") with regard to the discharges of pollutants from facilities of Shamrock Materials, Inc. and Shamrock Materials of Novato, Inc. ("Shamrock") into the Russian River and its tributaries, Santa Rosa Creek, Novato Creek, the Petaluma River, and San Francisco Bay all navigable waters of the United States, in violation of the Clean Water Act.

This **Notice** addresses Shamrock's failure to comply with the terms and conditions of California's General Industrial Storm Water Permit for Industrial Storm Water Discharges (WDID 228S003380), its un-permitted discharges of contaminated storm water from its facilities, its discharges of non-storm water pollutants from its facilities in violation of effluent limitations, and its violations of the procedural requirements of National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 97-03-DWQ and Water Quality Order No. 91-13-DWQ (as amended by Water Quality Order 92-12-DWQ) issued pursuant to Clean Water Act § 402(p), 33 U.S.C. § 1342(p) ("General Permit").

River Watch also places Shamrock on notice that following the expiration of sixty (60) days from the date of this **Notice**, it intends to bring suit against Shamrock in Federal District Court for Shamrock's continuing violations of "an effluent standard or limitation,"permit, condition or requirement and/or "an order issued by the Administrator or a State with respect to such standard or limitation" under Clean Water Act § 505(a)(1), 33 U.S.C. § 1365(a)(1), the Code of Federal Regulations, and the Basin Plan, as exemplified by Shamrock's illegally discharging into waters of the United States without an NPDES permit for point source as opposed to non-point source discharges.

Clean Water Act § 505(b) requires that sixty (60) days prior to the initiation of a civil action under Clean Water Act § 505(a), a citizen must give notice of his/her intent to sue.  Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, the State in which the violations occur, and the registered agent of the alleged

violator.  River Watch believes that this **Notice** provides proper notice of Shamrock's violations as required by the Clean Water Act.

## BACKGROUND

Shamrock operates numerous mining, distribution, manufacturing, production, and retail facilities in Sonoma, Marin, and Napa Counties.[1]  The sites serve as stockpile areas, storage areas for concrete mixing materials and concrete product, cement manufacturing areas, and storage and distribution of other rock and sand products.  These sites also serve as cement truck wash out locations and truck storage and maintenance facilities.  In Petaluma and Cloverdale, Shamrock conducts in-stream mining and dredging.  All the sites discharge storm water high in suspended solids, total organic carbon, specific conductance, and pH that exceed limits set in the County Codes, Basin Plan for Region 1 and Region 2, the Clean Water Act, and those set out in the Porter Cologne Act.

In Cloverdale, Shamrock operates in-stream mining, gravel processing, retail distribution, and concrete manufacturing facilities.  These operations discharge fine sediments into the Russian River and its tributaries which are designated critical habitat.  The Russian River is Clean Water Act § 303(d) listed for sediment and nutrients.  The General Permit requires protection of both surface as well as groundwater.  Groundwater is also impacted by the routine dumping and crushing of concrete wastes on porous and uncovered surfaces.  Siltation ponds are unlined.  Sediments from the ponds are placed on to vineyard land to be subjected to heavy rains in the winter months.

Shamrock removes large amounts of sand and gravel (>150,000 cubic yards/year) from the Russian River, approximately one mile east of the town of Cloverdale.  Shamrock removes sand and gravel from portions of eleven bars that encompass 98.3 acres of riverbed below the plane of ordinary high water over a distance of 6.5 miles.  The excavation areas also extend from the confluence of Big Sulphur Creek 2,000 feet upstream.  The operations require nine river crossings, the construction and utilization of which generate fine and course sediments.

Mined sand and gravel are trucked to a processing plant located at 30022 Levee Road in Cloverdale for crushing, sorting, stockpiling, screening, and washing.  The Cloverdale processing site is located immediately adjacent to both the Russian River and Big Sulphur Creek.  Shamrock deposits cement wastes onsite, in an unlined waste containment pond.  The batch plant facility does not currently have coverage under the General Permit, and therefore is prohibited from discharging storm water runoff to surface waters.  Rock products are sold as-is or used as an ingredient for Shamrock's concrete products produced on Shamrock's Cloverdale site.  The Waste Discharge Requirements for this activity do not authorize the discharge of any waste material to waters of the state.

In addition to gravel processing, Shamrock operates a concrete batch plant at this Cloverdale site adjacent to the Russian River and Big Sulphur Creek. This facility has, however permitted storm water to runoff to surface waters.  Concrete batch plants that discharge storm water runoff to surface waters are required by federal law to obtain a NPDES industrial storm water permit.

1    285 Roberts Lane, Santa Rosa, CA; 999 Kaiser Road, Napa, CA; 548 DuBois, San Rafael, CA; 400 Hopper Street, Petaluma, CA; 101 East Washington Street, Petaluma, CA; Highway 116, Cotati, CA; 7552 Redwood Blvd. Novato, CA;  19725 Arnold Drive, Sonoma, CA and 290 Todd Road, Santa Rosa, CA.

The Russian River and its tributaries are habitat of naturally spawned populations of Coho salmon (*Oncorhynchus kisutch*), Steelhead trout (*Oncorhynchus mykiss*), and Chinook salmon (*Oncorhynchus tshawytscha*) inhabiting the California Coast Province. These salmon and trout have been federally listed as threatened under the Endangered Species Act. Critical habitat has also been designated for these species to include all estuarine and river reaches accessible to salmonids below longstanding, naturally impassable barriers. Designated critical habitat consists of the water, streambed, and adjacent riparian zone.

Excess concrete remaining in Shamrock's trucks is brought back to the Cloverdale plant and washed out into the unlined waste pond. Shamrock periodically dredges out this unlined washout pond and transports the material via trucks to an onsite area adjacent to Big Sulphur Creek. No provisions for the handling and recycling of concrete truck washout wastes are identified within Shamrock's Waste Discharge Requirements (Board Order Number 87-110).

Significant amounts of materials and pollutants are washed off the site during normal operations, storm events and flooding. In this manner pollution from the site enters waters of the United States. Storm water and non-storm water discharges occur through unauthorized transportation of concrete wastes and washout, extremely poor handling of concrete wastes and washout, lack of adequate buffers, driving of heavy equipment in and on the banks of the water courses, the absence of riparian vegetation, cracks in the berms, and large amounts of uncontrolled runoff from stockpiles which are pollutants.

Shamrock continues to install seasonal crossings over low flow river channels to facilitate access to gravel extraction areas. The construction and tear down of these crossings are an additional source of pollution, allowing large amounts of gravel and earthen materials to be discharged into the Russian River. Only the extraction area immediately adjacent to the processing site is directly accessible from the processing site.

During major storm events the Cloverdale site is often inundated by the Russian River causing releases of sediment and other pollutants to the River. Fuels, oils, grease and other pollutants are washed off the site during rain events. Shamrock's discharges contribute to a violation of applicable water quality standards each and every time the site is inundated and/or Shamrock discharges sediment to the Russian River.

In Santa Rosa, Shamrock operates a concrete manufacturing facility and retail distribution facility. This poorly maintained site impacts and threatens to impact groundwater. Raw product is stocked on site. Landscape materials, concrete related construction products such as mortar and sacked cement are also stored on site. The vast majority of this site is uncovered. Groundwater in the area of Roberts Lane is very close to the surface. Groundwater is not being monitored or protected. Storm water is polluted with concrete waste products. Washout from cement trucks is pumped to sump area and overflowed off site. Discharge is turbid or colored and often runs off site to storm drains. Total suspended solids have been measured as high as 2000 mg/l, specific conductance as high as 320 umho/cm, and pH at 9.12. The Basin Plan for the North Coast Region states that pH shall not be depressed below 6.5 nor raised above 8.5. In addition, storm water contains pollutants in amounts that far exceed the limits set by the U.S. Environmental Protection Agency. For example, the Agency's upper limit for total suspended solids is 100 mg/l.

Shamrock operates a cement manufacturing and retail distribution facility in Novato. Novato Creek serves as the back border of the facility. The beneficial uses of Novato Creek are municipal and domestic, habitat for rare and endangered species, and wildlife. Novato Creek is impacted by Shamrock's operation. Shamrock discharges to

storm drains, the Creek (which drains to San Francisco Bay), and groundwater. According to information obtained from the files of Water Quality Control Board Region II, annual reports submitted are incomplete, monitoring is inadequate, total suspended solids, specific conductance, and total organic carbon in discharges from the site are high. Groundwater is not being monitored or protected. The site is undersized for what Shamrock attempts to squeeze on to it.

In San Rafael, Shamrock operates a cement manufacturing and retail distribution facility. The site discharges to a roadside ditch that drains into San Francisco Bay. San Francisco Bay and the groundwater are impacted by Shamrock's operation. Groundwater is not being monitored or protected. The site is undersized for the entire cement, storage, and retail operation Shamrock attempts to squeeze onto the site. It is at the expense of proper runoff controls, storage, and treatment, that Shamrock operates a facility that is completely out of proportion to the land currently available to it.

In Napa, Shamrock operates mining and processing facilities in close proximity to the Napa River and its tributaries. Only 25 percent of the facility is covered with impervious surfaces. Groundwater is not being monitored or protected. Storm water discharged off site to storm drains and waters of the United States contains pollutants in amounts far exceeding the limits set by the Environmental Protection Agency. Total suspended solids have been measured as high as 1000 mg/l (The Agency's upper limit is 100 mg/l), pH at 10.9, total organic carbon at 24.4 mg/l, and specific conductance as high as 209. Pollutants are washed off the site with each significant rain into storm drains and waters of the United States.

Shamrock operates a trailer cement business and retail distribution facility in Cotati. Shamrock has not applied for a NPDES permit for this site. This site is porous and discharges to a roadside ditch which drains to the Laguna de Santa Rosa. A small cement manufacturing area is on-site. In addition, large amounts of material are exposed to storm events. Groundwater is not being monitored or protected.

In Petaluma, Shamrock operates a large sand and gravel dredging facility and a large processing facility. Total suspended solids in discharges are high (524 mg/l), the annual reports are incomplete, pH has been measured as high as 9.9 and specific conductance as high as 140 mg/l.

In summary, Shamrock operates facilities wherein enormous amounts of sand, gravel, rock, and cement manufacturing ingredients are exposed to storm water without the benefit of adequate or actual storm water management plans. Shamrock's operations are conducted in the open air. The operations discharge, and threaten to discharge, large amounts of pollutants to surface and groundwater.

The entire Shamrock facilities in Novato and San Rafael are utilized to store products unprotected from storm events, wash out cement trucks, and produce concrete , leaving no room for proper management of storm water. The result is that heavily polluted storm water leaves the site untreated. The properties and activities of Shamrock are surrounded by storm drains and the biologically sensitive Novato Creek. Shamrock does not employ best management practices (BMPs) and fails to devote adequate space and resources to filter, retain, or percolate polluted storm water. Municipal storm drains are within ten feet of uncovered stockpiled materials. Novato Creek, into which the storm drains empty, discharges to the San Francisco Bay. Rains saturate the Marin sites and washes pollutant-laden runoff into the storm drains in excess of that allowed by law.

In Sonoma County, Shamrock operates facilities in Petaluma, Santa Rosa, Cloverdale, Sonoma, and Cotati. The Shamrock facility on Gravenstein Highway, Cotati is not covered by a Notice of Intent but has large amounts of material exposed to

storm events. Stock piles of concrete mixing materials are on site, and the site discharges to a road side ditch.   The facility on Roberts Avenue, Santa Rosa fails to adequately manage storm water.  Storm water mixes with concrete, collects on site, drains and is pumped to sump area which overflows polluted discharge offsite onto the ground. Groundwater is not protected or monitored.   Samples taken have contained total suspended solids as high as 2000 mg/l and pH of 9.12.

## VIOLATIONS

Discharging Without a NPDES Permit for Industrial Activity

Shamrock's activities at the sites identified in this **Notice** are industrial in nature - gravel mining, gravel processing and cement manufacturing. Therefore each site requires a NPDES storm water permit.  This part of the **Notice** addresses Shamrock's failure to comply with the terms and conditions of the General Permit.

Clean Water Act § 402(p)(4)(A) required the EPA to establish regulations for permits for discharges of storm water associated with industrial activity. The EPA's storm water discharge regulations provide that, "Dischargers of storm water associated with industrial activity are required to apply for an individual permit, apply for a permit through a group application, or seek coverage under a promulgated storm water general permit." 40 C.F.R. § 122.26(c)(1). The Ninth Circuit has observed that "the language 'discharges associated with industrial activity' is very broad. The operative word is 'associated.' It is not necessary that storm water be contaminated or come into direct contact with pollutants; only association with any type of industrial activity is necessary." Natural Resources Defense Council, Inc. v. EPA, 966 F.2d 1292, 1304 (9th Cir. 1992). Here, Shamrock's operations occur in the open air.  Storm water, therefore comes into contact with its operations. Because Shamrock discharges storm water associated with its industrial activities, it was required to obtain a storm water discharge permits for all its sites by October 1, 1992 and to comply with the terms of that permit.

The Clean Water Act prohibits storm water discharges associated with industrial activity without a NPDES permit (Clean Water Act § 402(p); 40 C.F.R. § 122.26).  The General Permit prohibits the discharge of material other than storm water to waters of the nation, unless such discharges are regulated under a NPDES permit; and, prohibits the discharge of storm water which causes or threatens to cause pollution, contamination, or nuisance.  The General Permit prohibits the discharge of storm water to surface or groundwater which adversely impacts human health or the environment.

The General Permit requires storm water dischargers to comply with its terms, including the filing of a Notice of Intent ("NOI") to be covered under the General Permit; the development and implementation of a Storm Water Pollution and Prevention Plan ("SWPPP"); and, the development and implementation of a Monitoring and Reporting Program.

The sites identified in this **Notice** are subject to storm water effluent limitations, new source performance standards, and/or toxic pollutant effluent standards (40 CFR Subchapter N) as well as effluent limitation guidelines specified by 40 CFR Parts 411, 436, 440 and 443.  Shamrock is required to develop Best Management Practices ("BMP") using Best Available Technology ("BAT") and best conventional technology ("BCT") to control and/or eliminate pollution.

River Watch contends that Shamrock has failed to adequately develop or implement SWPPPs or Monitoring and Reporting Programs for each identified site. The Shamrock facility at 8150 Highway 116, Cotati, CA, 19725 Arnold Drive, Sonoma, CA and 101 E. Washington Street, Petaluma, CA are not covered by the General Permit.  At

these sites, Shamrock has failed to perform visual observations of storm water discharges and authorized storm water discharges; collect and analyze samples of storm water discharges for pH, total suspended solids, total organic carbon, specific conductance, toxic chemicals, and other pollutants which are likely to be present in storm water discharges in significant quantities, and those parameters listed in Table D of the General Permit as well as those constituents listed in the CFR sections referenced above; and, has failed to report the results of required sampling in an Annual Report.

For all of Shamrock's other sites identified in this **Notice**, Shamrock has failed to submit complete and timely Annual Reports, failed to adequately monitor discharges, failed to implement BMPs, and failed to update SWPPPs as necessary.

Each and every day from April 28, 2000 to April 28, 2005, Shamrock has been in violation of the Clean Water Act for its failure to: 1) develop and implement adequate SWPPPs; and, 2) develop and implement adequate Monitoring and Reporting Programs as required by the General Permit and/or Clean Water Act § 402(p). These violations are continuing. The General Permit requires storm water dischargers to comply with its terms, including the development and implementation of SWPPPs and the development and implementation of a Monitoring and Reporting Programs.

River Watch contends that Shamrock has not implemented BMPs by failing to use BAT or BCT to control or eliminate its storm water discharges. Shamrock's aggressive use and operations at the Novato, Santa Rosa, and San Rafael sites improperly limits its ability to implement BMPs including but not limited to source control, catch basins, treatment options, filtration, storage, and construction of enclosed areas.

Shamrock is violating the General Permit by:

(1)     allowing materials other than storm water (non-storm water discharges) that discharge either directly or indirectly to waters of the United States;

(2)     causing or threaten to cause pollution, contamination, or nuisance; exceeding the specified effluent limitations identified above;

(3)     discharging storm water containing hazardous substances equal to or in excess of a reportable quantity listed in 40 CFR Part 117 and/or 40 CFR Part 302;

(4)     failing to reduce or prevent pollutants associated with industrial activity in storm water discharges and authorized non-storm water discharges through implementation of BAT for toxic and non-conventional pollutants and BCT for conventional pollutants;

(5)     failing to develop and implement SWPPPs that comply with the requirements in Section A of the General Permit and that include BMPs that achieve BAT/BCT;

(6)     discharging storm water and non-storm water to surface or ground water which adversely impact human health or the environment;

(7)     causing or contributing to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Water Board's Basin Plan as discussed above;

(8)    failing to submit reports to the RWQCB that describe the BMPs that are currently being implemented and additional BMPs that will be implemented to prevent or reduce any pollutants that are causing or contributing to the exceedance of water quality standards; and

(9)    failure to update SWPPPs and Monitoring and Reporting Programs to reflect changes in BMPs, BATs and BCTs.

Storm Water Pollution Prevention Program

The General Permit requires dischargers in operation prior to October 1, 1992 to have developed and implemented a SWPPP no later than that date. If Shamrock began industrial activities after October 1, 1992, it must develop and implement SWPPPs for each of its sites at the start of operations.

The SWPPP must be designed to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges and authorized non-storm water discharges from Shamrock's facilities; and, to identify and implement specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges and authorized non-storm water discharges. Shamrock's facilities directly and indirectly discharge, or threaten to discharge, to the Russian River, Santa Rosa Creek, the Petaluma River, Novato Creek, San Francisco Bay and to groundwater. The General Permit details the specific requirements for preparing and implementing a SWPPP.

Information obtained from the files of the offices of Region I and Region II Water Quality Control Boards indicates that Shamrock has not fully developed and/or adequately implemented SWPPPs for its industrial operations at the sites identified in this **Notice**. In addition, Shamrock has failed to eliminate non-storm water discharges from its facilities. Shamrock has been and will continue to be in violation every day it discharges unauthorized non-storm water and every day it discharges storm water containing pollutants without adequately implementing SWPPPs for its facilities.

Shamrock has inadequately identified and inadequately assessed all potential sources of pollutants and has failed to describe the appropriate BMPs necessary to reduce or prevent these potential pollutants in its SWPPPs. One of the major elements of the SWPPP is the elimination of unauthorized non-storm water discharges to a facility's storm drain system. Unauthorized non-storm water discharges at the identified sites are generated from a wide variety of pollutant sources. They include waters from the rinsing or washing of vehicles, equipment, buildings, or pavement; materials that have been improperly disposed of or dumped, and spilled; or leaked materials. Unauthorized non-storm water discharges can contribute a significant pollutant load to receiving waters. Measures to control spills, leakage, and dumping must be addressed through BMPs. Shamrock's BMP''s fail to adequately address the specific sources of pollution found at the identified sites. Shamrock's SWPPP for the sites do not evaluate all potential pollution conveyances to determine whether they convey unauthorized non-storm water discharges to the storm drain system.

As a result, Shamrock has been in continuous violation of the monitoring and reporting requirements every day since April 28, 2000 through at least April 28, 2005. Furthermore, Shamrock will continue to be in violation of the SWPPP requirements every day it discharges non-storm water and storm water containing pollutants without developing and implementing an adequate SWPPP for its facilities.

Monitoring and Reporting Program

The General Permit requires dischargers in operation prior to October 1, 1992, to have developed and implemented a Monitoring Program no later than that date. Shamrock began industrial activities after October 1, 1992, and must develop and implement a Monitoring Program at the start of operations.

The Monitoring Program must be designed to ensure that storm water discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the General Permit; and, must include visual observations and comprehensive sampling and analysis, and reporting.

Information obtained from the offices of Region I and region II Water Resources Control Board indicates that Shamrock has not adequately developed and/or implemented Monitoring Programs at the sites identified in this **Notice**. Shamrock has failed to: 1) perform visual observations of storm water discharges and authorized storm water discharges; and 2) collect and analyze samples of storm water discharges for pH, total suspended solids, total organic carbon, specific conductance, toxic chemicals, and other pollutants which are likely to be present in storm water discharges in significant quantities, and those parameters listed in Table D of the General Permit as well as those constituents listed in the CFR sections referenced above; and 3) report the results of required sampling in its Annual Report.

As a result, Shamrock has been in continuous violation of the monitoring and reporting requirements every day since April 28, 2000 through at least April 28, 2005. Furthermore, Shamrock will continue to be in violation of the monitoring requirements every day it discharges non-storm water and storm water containing pollutants without developing and implementing an adequate Monitoring Program for its facilities.

## CONTACT INFORMATION

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and ground water in Northern California. River Watch is organized under the laws of the State of California. Its address is 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA 95472. Telephone 707-824-4371. River Watch''s e-mail address is Rvrwatch@yahoo.com and web site is northerncaliforniariverwatch.org

River Watch has retained legal counsel to represent them in this matter. All communications should be addressed to:

Kimberly Burr, Esquire    Tel. 707-528-8175
Jack Silver, Esquire
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95404-5469

River Watch is willing to work with Shamrock to bring it into compliance with the Clean Water Act. However, unless contact with our legal counsel is made before the expiration of the 60 day notice period, River Watch will file suit in federal court to compel compliance.

Very truly yours,

Kimberly Burr

cc:

Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Mail Code 3213A
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental  Protection Agency Region 9
75 Hawthorne St.
San Francisco, CA 94105-3920

Celeste Cantü, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California  95812-0100

# Law Office of Jack Silver



P.O. Box 5469          Santa Rosa, California 95402
Phone  707-528-8175     Fax  707-528-8675
lhm28843@sbcglobal.net

November 1, 2006

*Via Certified Mail / Return Receipt Requested*

Eugene B. Ceccotti, Owner, President
and Registered Agent
Shamrock Materials of Novato, Inc.
Shamrock Materials, Inc.
181 Lynch Creek Way, Suite 200
Petaluma, CA  94954-2388

Re:  *Supplemental Notice of Violations and Intent to File Suit Under the Clean Water Act*

Dear Mr. Ceccotti:

I am writing on behalf of Northern California River Watch ("River Watch") with regard to the discharges of pollutants from facilities of Shamrock Materials, Inc. and Shamrock Materials of Novato, Inc. ("Shamrock") into the Russian River, Santa Rosa Creek, Laguna de Santa Rosa, Novato Creek, Petaluma River, and San Francisco Bay and their associated wetlands and tributaries - all navigable waters of the United States, in violation of the Clean Water Act ("CWA").

On or about April 28, 2005, River Watch served Shamrock with a 60 day notice of its intent to file suit against Shamrock under the CWA ("Notice" or "original Notice"). After the end of the 60 day Notice period the parties entered into an Agreement to Stay the Filing of Litigation which provided in part that, for "the purposes of all procedural requirements under the Clean Water Act, River Watch will be deemed to have filed its action as of the date this Agreement to Stay Filing of Litigation is executed by all parties." The Agreement was extended twice by Stipulation of the parties, and expired on October 26, 2006. This Supplemental Notice supplements the original Notice and will be referred to hereafter as Supplemental Notice. The original Notice is fully incorporated into this Supplemental Notice.

This Supplemental Notice addresses Shamrock's failure to comply with the terms and conditions of California's General Industrial Storm Water Permit for Industrial Storm Water Discharges (WDID 228S003380), its unpermitted discharges of contaminated storm water from its facilities, its discharges of non-storm water pollutants from its facilities in violation of effluent limitations, and its violations of the procedural requirements of National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 97-03-DWQ and Water Quality Order No. 91-13-DWQ (as amended by Water Quality Order 92-12-DWQ) issued pursuant to CWA § 402(p), 33 U.S.C. § 1342(p) ("General Permit").

River Watch also places Shamrock on notice that following the expiration of sixty (60) days from the date of this Supplemental Notice, it intends to bring suit against Shamrock in the United States District Court for Shamrock's continuing violations of "an effluent standard or limitation," permit, condition or requirement and/or "an order issued by the Administrator or a State with respect to such standard or limitation" under CWA § 505(a)(1), 33 U.S.C. § 1365(a)(1), the Code of Federal Regulations, and the Basin Plan, as exemplified by Shamrock's illegally discharging non-storm water or during non-storm events from a point source into waters of the United States without an NPDES permit. CWA §§ 402(a) and 402(b), 33 U.S.C. 1342(a) and 1342(b); CWA § 301(a), 33 U.S.C. 1311(A)

CWA § 505(b), 33 U.S.C. 1365(b), requires that sixty (60) days prior to the initiation of a civil action under CWA § 505(a), a citizen must give notice of his/her intent to sue. Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, the State in which the violations occur, and the registered agent of the alleged violator.

The CWA requires that any notice regarding an alleged violation of an effluent standard or limitation, or of an order with respect thereto, shall include sufficient information to permit the recipient to identify:

1.      The specific standard, limitation, or order alleged to have been violated.

To comply with this requirement River Watch has identified the specific NPDES permit or lack of a NPDES permit including whether the permit falls under CWA § 402(p) or CWA §§ 402(a) and 402(b).

2.      The activity alleged to constitute a violation.

To comply with this requirement River Watch has set forth below narratives describing with particularity the activities leading to violations.

3.      The discharger responsible for the alleged violation.

The discharger responsible for the alleged violations are the entities collectively referred to as Shamrock throughout this Supplemental Notice.

    4.      The location of the alleged violation.

The location or locations of the various violations are identified in the original Notice and Supplemental Notice[1] and in records either created or maintained by or for Shamrock which relate to Shamrock's activities.

    5.      The date or dates of violation or a reasonable range of dates during which the alleged activities occurred.

The range of dates covered by this Supplemental Notice is November 1, 2001 through November 1, 2006. River Watch will from time to time update and or supplement its original Notice to include all violations which occur after that date. The majority of the violations such as failure to obtain a NPDES permit, failure to implement required Best Management Practices, poor housekeeping, etc., are continuous, and therefore each day is a violation. River Watch believes that all violations set forth in the original Notice and this Supplemental Notice are continuing in nature or will likely continue after the filing of a lawsuit or the amending of any complaint already filed. Specific dates of violations are evidenced in Shamrock's own records (or lack thereof) or files and the records or files of other agencies including the Regional Water Quality Control Board, County Health and the police department.

    6.      The full name, address, and telephone number of the person giving notice.

This information can be found at the end of this Supplemental Notice.

## BACKGROUND

Shamrock operates numerous gravel mining, sand and gravel distribution, manufacturing, production, and retail facilities in Sonoma, Marin, and Napa Counties. The sites serve as stockpile areas, storage areas for ingredients in cement manufacturing, cement manufacturing areas, washing and rinsing areas, concrete product storage areas and many other rock and landscaping products including bark and compost storage and sales. These sites also serve as cement truck wash out locations and truck storage and maintenance facilities.

In Sonoma County, Shamrock's sites drain to the Russian River[2], Santa Rosa Creek, the

---

[1] 30022 Levee Road, Cloverdale, CA, 285 Roberts Lane, Santa Rosa, CA, 999 Kaiser Road, Napa, CA, 548 DuBois Street, San Rafael, CA, 400 Hopper Street, Petaluma, CA, 101 East Washington Street, Petaluma, CA, 8150 Highway 116, Cotati, CA, 16 Landings Way, Petaluma, CA, 7552 Redwood Boulevard, Novato, CA, 19725 Arnold Drive, Sonoma, CA and 290 Todd Road, Santa Rosa, CA.

[2] The Russian River and its tributaries are habitat of naturally spawned populations of Coho salmon (Oncorhynchus kisutch), Steelhead trout (Oncorhynchus mykiss), and Chinook salmon (Oncorhynchus tshawytscha) inhabiting the California Coast Province. These salmon and trout have been federally listed as threatened under the Endangered Species Act. Critical habitat has also been designated for these species to include all estuarine and river reaches accessible to salmonids below longstanding, naturally impassable barriers. Designated critical habitat consists of the water, streambed, and adjacent riparian zone.

Laguna de Santa Rosa, the Petaluma River, and their tributaries which are already impaired for sediment and are designated critical habitat. In Marin County, Shamrock's sites drain to the Novato Creek and tributaries to the San Francisco Bay. In Napa County, Shamrock's sites drain to tributaries of the Napa River and eventually the San Francisco Bay.

All of these sites discharge storm water high in suspended solids, sediment, total organic carbon, specific conductance, and pH which exceed limits set in the Basin Plans for Region 1 and Region 2, benchmarks set by the Environmental Protection Agency, effluent limits established by the CWA or those set forth in the Porter Cologne Act. Exceeding any of these standards or limits is evidence of failure to meet Best Management Practices ("BMPs"), poor house keeping, failure to properly maintain records, failure to update Storm Water Pollution and Prevention Plans ("SWPPPs) or direct violations of effluent limitations made effective through the General Permit.

## A.   **Sonoma County**

Cloverdale -

At Shamrock's Cloverdale site activities include mining and gravel processing operations, retail distribution, rock washing and rinsing operations, cement recycling, and cement manufacturing. The large property sits approximately 10 feet below the elevation of a levee that allegedly separates the operations taking place on the site from the Russian River. During the dry season the site is approximately 300 feet from the River. In winter, that distance is much smaller and the site has been inundated in the past.

Mined sand and gravel are trucked to a processing plant located at 30022 Levee Road in Cloverdale for crushing, sorting, stockpiling, screening, and washing.[3] In addition to gravel processing, Shamrock operates a cement batch plant at the Cloverdale site which is adjacent to the Russian River and Big Sulphur Creek. Shamrock has no NPDES permit for the Cloverdale site. Therefore, Shamrock is prohibited from discharging directly or indirectly to surface waters. Nonetheless, pollutants including turbidity, sediment, conductivity, pH, metals, petroleum products, suspended and soluble solids are released into Sulfur Creek, the Russian River and its tributaries. The Russian River and its tributaries are designated critical habitat. The Russian River is CWA § 303(d) listed as impaired for sediment, a chief component of Shamrock's discharge.

Shamrock deposits cement wastes in locations where the waste comes into contact with rain and generates runoff. Sediment process ponds are unlined and percolate to the adjacent surface

---

[3] As part of industrial activities associated with the Cloverdale site, Shamrock removes large amounts of sand and gravel (>150,000 cubic yards/year) from the Russian River, approximately one mile east of the town of Cloverdale. The sand and gravel is removed from portions of eleven gravel bars that encompass 98.3 acres of riverbed below the plane of ordinary high water over a distance of 6.5 miles. The excavation areas also extend from the confluence of Big Sulphur Creek some 2,000 feet upstream. The operations require nine river crossings, the construction and utilization of which generate fine and course sediments. Shamrock continues to install seasonal crossings over low flow river channels to facilitate access to gravel extraction areas. The construction and tear down of these crossings are an additional source of pollution, allowing large amounts of gravel and earthen materials to be discharged into the Russian River which is CWA 303(d) listed for sediment. Only the extraction area immediately adjacent to the processing site is directly accessible from the processing site.

waters carrying pollutants through the unconfined aquifer to surface waters. Shamrock periodically dredges out unlined ponds and cement drying bays and transports the material via trucks to an onsite area adjacent to surface waters. This area is uncovered and completely exposed to rain. Rain washes pollutants off the exposed materials and into ground water or directly off site. Pollutants entering the unconfined aquifer percolate to adjacent surface waters. No provisions for the handling and recycling of concrete truck washout wastes are identified within Shamrock's Waste Discharge Requirements (Board Order Number 87-110).

Materials and pollutants are washed off the site during normal operations, storm events, and flooding. In this manner pollution from the site, directly and indirectly, enters waters of the United States. Storm water and non-storm water discharges occur through unauthorized transportation of concrete wastes and washout, extremely poor handling of cement wastes and washout, lack of adequate buffers, driving of heavy equipment in and on the banks of the water courses, the absence of riparian vegetation, cracks in the berms, and large amounts of uncontrolled runoff from stockpiles to the bare ground.

When the Cloverdale site is inundated by the Russian River, releases of sediment and other pollutants occur including fuels, oils, and grease. Shamrock's discharges contribute to a violation of applicable water quality standards each and every time the site is inundated.

The Cloverdale ponds are point sources as is the entire site. The ponds violate the Basin Plan's requirements for separation of wastes from ground water. The unlined percolation ponds are in the unconfined aquifer which is hydrologically connected to adjacent waters of the United States. Thus this discharge from the ponds to waters of the United States via the unconfined aquifer is a violation of the CWA.

285 Roberts Lane, Santa Rosa -

Shamrock operates this cement manufacturing site under the General Permit. The site includes a cement truck washout area which discharges to the bare ground. Pollutants from this site migrate off site, and enter storm drains connected to the Santa Rosa Creek and the Laguna de Santa Rosa, tributaries of the Russian River.   The Laguna de Santa Rosa is CWA 303(d) listed for sediment and nutrients. The discharge is turbid and often colored. This site, like several of Shamrock's other sites, includes a grizzly[4] that intercepts and collects ground water and acts as a conduit for pollution to ground water. Ground water is not protected, and no monitoring of ground water occurs. Ground water in the area of this site, in the Santa Rosa basin, is very close to the surface. Stormwater is polluted with concrete waste products. Some of the contaminated stormwater is pumped to an experimental sand filter system and discharged to bare ground where

---

[4]  A pit into which ingredients for cement manufacturing are dumped and then moved via a conveyor belt up into a silo for loading cement trucks.

it percolates and flows off site.   None of the operational pollution controls are described with detail in Shamrock's SWPPP. No BMPs are set forth in the SWPPP to insure the efficacy or maintenance of the pollution devices.

Discharge sampling for specific conductance has been measured as high as 320 umho/cm, and pH at 9.12.   The Basin Plan for the North Coast Region prohibits discharges of pH to be above 8.5.  In addition to pH, the stormwater contains pollutants in amounts which far exceed limits expected when BMPs are adequate.   For example, the Environmental Protection Agency's benchmark for total suspended solids is 100 mg/l. Discharges from this site have been recently measured as high as 2000 mg/l - 20 times that benchmark.

290 Todd Road, Santa Rosa
8150 Highway 116, Cotati
19725 Arnold Drive, Sonoma

Shamrock has no NPDES permits covering these sites.  Operations include stockpiling raw materials, processing cement, processing cement wastes and retail activities.  Except for a few small buildings the Todd Road site is open and exposed to the rains.  Processes, materials, and products are exposed to rain water, and discharges of polluted storm water occur with every significant rain. Shamrock operates a trailer cement business at all these sites as well as retail distribution facilities. Cement waste is discharged where it has the potential to and often does run off site during rains.

The Cotati site is located  near Highway 101.  The site  is porous and excess runoff discharges to a roadside ditch which drains to the Laguna de Santa Rosa.  Ground water is not being monitored or protected.

Operations on the site in Sonoma include cement batching, stock piling of materials, washing of cement trucks and loading using a grizzly.  The site is porous, and cement batch plant activities generate pollutants which discharge off site and into surface waters.  The on site ponds are hydrologically connected to and sit adjacent to the creek approximately 50 feet away.  Pollutants are washed from this site during heavy rains into the adjacent waterway.  The pollution controls are inadequate to prevent runoff.  Shamrock has no NPDES permit for this site.

101 E. Washington Street, Petaluma -

The retail and trailer cement facility at this site, which is adjacent to the Petaluma River, suffers from the same inadequacies as described for the Cotati and Sonoma sites.   Due to the proximity of the Petaluma River, pollutants are washed from the site to the River with each rain of 1 inch or more.  Shamrock has no NPDES permit for this site.

16 Landings Way, Petaluma -

Shamrock operates a large sand and gravel processing facility at this site which includes importation and stockpile of raw materials.   The site sits adjacent to the Petaluma River and is not regulated by a NPDES permit.   Runoff from the stockpiled sand and gravel washes to the creek bordering the property and flows to the river.   The processing facility and cement batch plant

operations occur up stream of the importation site at 400 Hopper Street in Petaluma, a site which sits adjacent to a canal of the Petaluma River. The site is covered by the General Permit. Total suspended solids reported in discharges are high (524 mg/l), pH has been measured as high as 9.9 and specific conductance as high as 140 mg/l. All are in excess of Environmental Protection Agency benchmarks and evidence of poor housekeeping and inadequate BMPs. The annual reports are incomplete as are other reports required to prove compliance.

400 Hopper Road, Petaluma -

The processing facility and cement batch plant operations occur upstream of the importation site at Landings Way and are adjacent to a canal of the Petaluma River. The site is covered by the General Permit. Total suspended solids reported in discharges are high (524 mg/l), pH has been measured as high as 9.9 and specific conductance as high as 140 mg/l, all in excess of Environmental Protection Agency benchmarks and evidence of poor housekeeping and inadequate BMPs. An enviroport is in use at the site to attempt to recycle cement wastes. An experimental sand filter is also on site for the excess waste water associated with the processing of cement. Storm water associated with the so called "retail" area is discharged via an on-site drop inlet to the Petaluma River. Shamrock does not treat "retail areas" as industrial discharges. These discharges although associated with the industrial activity and contaminated by industrial activity, do not benefit from adequate BMPs, monitoring or reporting. The annual reports are incomplete as are other reports required to prove compliance.

B.    **Marin County**

7552 Redwood Boulevard, Novato -

Shamrock operates a cement manufacturing and retail distribution facility at this site which is visible from and west of Highway 101. Novato Creek serves as the back border of the site. The beneficial uses of Novato Creek include municipal and domestic water supply, recreation, habitat for rare and endangered species, and wildlife. Novato Creek is impacted by Shamrock's operations. A grizzly is utilized on site. Shamrock discharges to storm drains, the Novato Creek (which drains to San Francisco Bay), and ground water. According to information obtained from the files of the Regional Water Quality Control Board - Region 2, annual reports submitted by Shamrock are incomplete, monitoring is inadequate, total suspended solids, specific conductance, and total organic carbon in discharges from the site are above benchmark. Ground water is not being monitored or protected. The size of the site is inadequate to afford proper runoff controls, storage, and treatment of polluted run off.

548 DuBois Street, San Rafael -

Shamrock operates a large, heavily used cement manufacturing and retail distribution facility on this site. The site discharges to city storm drains and the creek which composes the long back border of the site. These storm drains connect to the San Francisco Bay. The sensitive urban creek and San Francisco Bay are adversely impacted by Shamrock's operations. The site also consists of a large and busy retail area where products are exposed to rain water. Truck traffic passes through the area during business hours. Drain drop-inlets in this area convey polluted storm water directly

to the creek not more than 200 feet away.  An experimental, storm water filtration system has been devised to attempt to treat some of the polluted storm water from the cement batch plant and truck washout areas before it leaves the site.  Although this site is covered by the General Permit Shamrock has never developed any BMPs to determine the efficacy of or to provide the maintenance for this device. Dirt and product are tracked out onto city streets by the numerous trucks exiting the site where they then mix with storm water and enter city storm drains.

Good house keeping and BMPs implementing Best Available Technology ("BAT") are used at rival facilities operated by Canyon Rock and Syar Industries which operate numerous facilities in the North Bay counties in which trucks and even other vehicles which might track pollutants to the street are washed down to prevent these pollutants from migrating offsite.  Shamrock's BMPs don't address the truck or vehicular traffic, nor any part of the facility which Shamrock considers to be "retail", regardless of the pollution or potential pollution from this part of the operations.

## C.     Napa County

Shamrock operates mining and processing facilities at the 999 Kaiser Road site which is in close proximity to the Napa River and its tributaries.  Portions of the site are porous.  Ground water is not being monitored or protected.  Polluted storm water discharges off site to bare ground, storm drains, and to waters of the United States. The pollutant load often exceeds Environmental Protection Agency benchmarks.  Total suspended solids have been measured as high as 1000 mg/l (benchmark is 100 mg/l), pH at 10.9 (benchmark is 8.5), total organic carbon at 24.4 mg/l, and specific conductance as high as 209.  Pollutants are washed off the site with each significant rain into storm drains and waters of the United States. Shamrock has no NPDES permit covering this site.

## D.     Summary

Shamrock operates facilities at numerous sites wherein significant quantities of sand, gravel, rock, and cement manufacturing ingredients, product and waste are exposed to stormwater without the benefit of adequate or actual storm water management plans.  None of the facilities are covered by a NPDES permit for non-storm water discharges (CWA §§ 402(a) and 402(b)).  The sites and ponds on site are point sources subject to permitting.  Therefore, non-storm water discharges of pollutants to surface waters is a violation of the CWA.   Many of the facilities are not covered by a NPDES storm water permit (CWA § 402(p)), regardless of the fact that all the facilities discharge or threaten to discharge, large amounts of pollutants to surface and ground waters.

Shamrock's operations at these sites are conducted in the open air and are not self contained. Shamrock fails to  implement BMPs as evidenced by numerous criteria: 1) discharging pollutants above Environmental Protection Agency benchmark; 2) violating Basin Plan limitations and narrative standards; 3) failing to use BATs or best current technology - the standard practice in the industry; 4) failing to describe BMPs in particularity; and, 5) failing to implement adequate site specific BMPs.

Shamrock's activities at the sites identified in this Supplemental Notice are industrial in nature -  gravel mining, gravel processing, stockpiling, rinsing, sorting, distributing, and manufacturing.  So called "retail" areas are fully integrated into the industrial nature of the sites.

# SUMMARY OF VIOLATIONS

## A.   Failure to Obtain a NPDES Permit for Non-Storm Water Discharges

None of Shamrock's facilities have NPDES permits for non-storm water discharges. The following sites have ponds which are hydrologically connected to adjacent waters of the United States:

- 30022 Levee Road Cloverdale, CA
- 19725 Arnold Drive, Sonoma, CA

Ponds are point sources. Discharges from point sources to waters of the United States violates the CWA. The following sites have offsite migration of pollution to waters of the United States and are point sources:

- 30022 Levee Road Cloverdale, CA
- 290 Todd Road, Santa Rosa, CA
- 285 Roberts Lane, Santa Rosa, CA
- 19725 Arnold Drive, Sonoma, CA
- 101 E. Washington Street, Petaluma, CA
- 16 Landings Way, Petaluma, CA
- 400 Hopper Road, Petaluma, CA
- 7552 Redwood Boulevard, Novato, CA
- 548 DuBois Street, San Rafael, CA
- 999 Kaiser Road, Napa, CA

All of the sites have unauthorized non-storm water discharges which have been identified as coming from a wide variety of pollutant sources. They include waters from the rinsing or washing of vehicles, equipment, buildings, or pavement; materials that have been improperly disposed of or dumped, and spilled; or, leaked materials. Unauthorized non-storm water discharges can contribute a significant pollutant load to receiving waters. Transport and conveyance of materials, dust suppression activities, truck washing, sand and gravel rinsing, and cement truck wash out all occur during non-storm events. Wastes and sediments from these activities are discharged off site. These discharges impact or threaten to impact waters of the United States.

## B.   Failure to Obtain a NPDES Permit for Storm Water Discharges

Shamrock's facilities are considered Category 1 Dischargers by the State of California. Category 1 Dischargers are required to apply for a NPDES permit unless the facility does not discharge storm water to surface waters or separate storm sewers. Operations for which all the storm water is captured and treated and/or disposed of within the facility's percolation ponds are not required to obtain a storm water permit unless pollutants are reaching surface waters or separate storm sewers.

It is a violation of the CWA to discharge storm water or storm water containing pollutants directly or indirectly to waters of the United States without a NPDES permit. The following Shamrock sites have not obtained a NPDES permit for storm water discharges:

- 30022 Levee Road, Cloverdale, CA
- 290 Todd Road, Santa Rosa, CA
- 8150 Highway 116 South, Cotati, CA
- 19725 Arnold Drive, Sonoma, CA
- 101 E. Washington Street, Petaluma, CA
- 16 Landings Way, Petaluma, CA

As described above these sites discharge polluted storm water off site which enters, either directly or indirectly, waters of the United States.

CWA § 402(p)(4)(A) required the Environmental Protection Agency to establish regulations for permits for discharges of storm water associated with industrial activity. Those discharge regulations provide that, where activities and materials (material handling, storage, loading, transportation or conveyance of raw materials, intermediate product, finished product, by-product or waste product) are exposed to storm water, coverage is warranted. "Dischargers of storm water associated with industrial activity are required to apply for an individual permit, apply for a permit through a group application, or seek coverage under a promulgated storm water general permit." 40 C.F.R. § 122.26(c)(1).

The language "discharges associated with industrial activity" is very broad. The operative word is "associated." It is not necessary that storm water be contaminated or come into direct contact with pollutants; only association with any type of industrial activity is necessary. Shamrock's operations occur in the open air. Storm water therefore comes into contact with its operations. Because Shamrock discharges storm water associated with its industrial activities, it was required to obtain a storm water discharge permit for all of its sites by October 1, 1992 and to comply with the terms of that permit.

**C.** **Failure to Comply with the NPDES General Storm Water Permit for Industrial Activity**

For the sites for which coverage under the NPDES permit for storm water discharges associated with industrial activity has been obtained, Shamrock has failed to comply with those permit conditions in substantive ways including failure to implement best available pollution control techniques, failure to adequately monitor discharges, and failure to update practices and storm water pollution prevention plans in an expeditious manner as required.

The General Permit requires storm water dischargers to comply with its terms, including the filing of a Notice of Intent ("NOI") to be covered under the General Permit; the development and implementation of a SWPPP, the development and implementation of a Monitoring and Reporting Program, and the development and implementation of BMPs. Shamrock is required to develop BMPs using BAT, and best conventional technology to control and/or eliminate pollution. To assist dischargers the Regional Water Quality Control Board staff promotes *The Stormwater Best*

*Management Practice Handbook* a publication funded by the State Water Resources Control Board, Cal DOT and numerous municipalities. Last published in 2003, this publication sets forth minimum and general BMPs. Regions 1 and 2 of the Regional Water Quality Control Board have a General Permit for Gravel Mining and Sand and Gravel Operations which sets forth minimum BMPs for operations such as that of Shamrock

The sites identified in the original Notice and in this Supplemental Notice are subject to storm water effluent limitations, new source performance standards, and/or toxic pollutant effluent standards (40 CFR Subchapter N) as well as effluent limitation guidelines specified by 40 CFR Parts 411, 436, 440 and 443. Shamrock does not comply with these limitations, especially with respect to the specific limits established for cement manufacturing.

River Watch contends that Shamrock has failed to adequately develop or implement SWPPPs and Monitoring and Reporting Programs for each identified site. For the sites covered by the General Permit, River Watch contends Shamrock has failed to submit complete and timely Annual Reports, failed to adequately monitor discharges, failed to implement BMPs, and failed to update SWPPPs as necessary.

## D. <u>General Violations of the General Permit</u>

1. Allowing materials other than storm water (non-storm water discharges) that discharge either directly or indirectly to waters of the United States;

2. Causing or threatening to cause pollution, contamination, or nuisance, exceeding the specified effluent limitations identified in the original Notice and this Supplemental Notice;

3. Discharging storm water containing hazardous substances equal to or in excess of a reportable quantity listed in 40 CFR Part 117 and/or 40 CFR Part 302;

4. Failing to reduce or prevent pollutants associated with industrial activity in storm water discharges through implementation of BAT for toxic and non-conventional pollutants and BCT for conventional pollutants;

5. Failing to develop and implement SWPPPs which comply with the requirements in Section A of the General Permit and which include BMPs that achieve BAT/BCT;

6. Discharging storm water and non-storm water to surface or ground water which adversely impact human health or the environment;

7. Causing or contributing to an exceedance of any applicable water quality standard contained in a Statewide Water Quality Control Plan or the applicable Regional Water Quality Control Board's Basin Plan as discussed above;

8. Failing to submit reports to the Regional Water Quality Control Board describing BMPs currently being implemented and additional BMPs which will be implemented to prevent or reduce any pollutants causing or contributing to the exceedance of water quality standards;

9.      Failing to update SWPPPs and Monitoring and Reporting Programs to reflect changes in
        BMPs, BATs and BCTs.

**E.      Inadequate SWPPPs**

The General Permit requires dischargers in operation prior to October 1, 1992 to have developed and implemented a SWPPP no later than that date. If Shamrock began industrial activities after October 1, 1992, it must develop and implement a SWPPP for each of its sites at the start of operations.  Shamrock is required to conduct a reasonable potential analysis.  The SWPPP must be designed to identify and evaluate sources of pollutants associated with industrial activities which may affect the quality of storm water discharges and authorized non-storm water discharges from Shamrock's facilities; and, to identify and implement specific BMPs to reduce or prevent pollutants associated with industrial activities in storm water discharges and authorized non-storm water discharges in a timely manner.  Shamrock's SWPPPs contain only generalized BMPs without specifically addressing the details necessary to determine the efficacy of the BMPs or whether or not BAT or BCT can be achieved.

Although, discharges from Shamrock's permitted sites contained high levels of pollutants since at least the year 1997, Shamrock failed to update its SWPPPs until 2005. These SWPPPs are inadequate in many ways.  The operations, BMPs, and/or maintenance schedules are not described with particularity. The SWPPPs are not site specific nor do they contain accurate or detailed maps as required to demonstrate that each site has the capacity to treat, store, or otherwise properly dispose of specific quantities of polluted storm water. The General Permit details the specific requirements for preparing and implementing a SWPPP which are not followed by Shamrock.

Shamrock has inadequately identified and inadequately assessed all potential sources of pollutants and therefore has failed to describe the appropriate BMPs necessary to reduce or prevent these potential pollutants in its SWPPPs.  One of the major elements of the SWPPP is the elimination of unauthorized non-storm water discharges to a facility's storm drain system. Measures to control spills, leakage, and dumping must be addressed through BMPs. Shamrock's BMPs fail to adequately address the specific sources of pollution found at the identified sites.  Shamrock's SWPPP for the sites do not evaluate all potential pollution conveyances to determine whether they convey unauthorized non-storm water discharges to the storm drain system.

**F.      Inadequate Implementation of Monitoring and Reporting Programs**

The General Permit requires dischargers in operation prior to October 1, 1992, to have developed and implemented a Monitoring Program no later than that date. Shamrock began industrial activities after October 1, 1992, and must develop and implement a Monitoring Program at the start of operations.

The Monitoring Program must be designed to ensure that storm water discharges are in compliance with the Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations specified in the General Permit; and, must include visual observations and comprehensive sampling and analysis, and reporting.

Information obtained from the offices of Regions 1 and Region 2 of the Regional Water Quality Control Board indicates Shamrock has not adequately developed and/or implemented Monitoring Programs at the sites identified in this Supplemental Notice.  Shamrock has failed to :

1.    Perform visual observations of storm water discharges and authorized storm water discharges;

2.    Collect and analyze samples of storm water discharges for pH, total suspended solids, total organic carbon, specific conductance, toxic chemicals, and other pollutants which are likely to be present in storm water discharges in significant quantities, and those parameters listed in Table D of the General Permit as well as those constituents listed in the CFR sections referenced above; and,

3.    Report the results of required sampling in its Annual Report.

## CONTACT INFORMATION

River Watch is a non-profit corporation dedicated to the protection and enhancement of the waters of the State of California including all rivers, creeks, streams and ground water in Northern California.  River Watch is organized under the laws of the State of California.  Its address is 6741 Sebastopol Avenue, Suite 140, Sebastopol, CA 95472. Telephone 707-824-4371. Northern California River Watch's e-mail address is US@ncriverwatch.org and website is ncriverwatch.org.

River Watch has retained legal counsel to represent it in this matter.  All communications should be addressed to:

Kimberly Burr, Esquire
Jack Silver, Esquire
Law Office of Jack Silver
Post Office Box 5469
Santa Rosa, CA 95404-5469
Tel. 707-528-8175

## CONCLUSION

The violations as set forth in this Supplemental Notice affect the health and enjoyment of members of River Watch who reside and recreate in the affected communities. The members of River Watch use the affected watershed for domestic water supply, agricultural water supply, recreation, sports, fishing, swimming, shell fish harvesting, hiking, photography, nature walks and the like.  The members' health, use and enjoyment of this natural resource is specifically impaired by Shamrock's violations of the CWA.

Very truly yours,

Kimberly Burr

cc:

Stephen L. Johnson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Mail Code 3213A
Washington, D.C. 20460

Wayne Nastri, Regional Administrator
U.S. Environmental  Protection Agency Region 9
75 Hawthorne St.
San Francisco, CA 94105-3920

Celeste Cantü, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, California  95812-0100

Stephen K. Butler, Esquire
Clement, Fitzpatrick, and Kenworthy
3333 Mendocino Avenue, Suite 200
Santa Rosa, CA 95405

James E. Sell, Esquire
Lynch, Gilardi & Grummer
475 Sansome St. Suite 1800
San Francisco, CA 94111